IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| GARY L. QUIGG,<br><br>            Plaintiffs,<br><br>      vs.<br><br>CHRIS EVANS, et al.,<br><br>            Defendants. | CV 18-00090-H-BMM-JTJ<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

On October 9, 2018, this Court directed Plaintiff Gary Quigg, a prisoner

proceeding without counsel, to comply with Local Rule 3.1(e)(4) and indicate in

which two of his three pending cases he would like to proceed in forma pauperis.

(Doc. 4.)  Mr. Quigg responded indicating there were statute of limitations issues

which would preclude his claims raised in this action should he not be allowed to

proceed.  (Doc. 7.)  In light of these concerns, and out of an abundance of caution,

the Court will grant Mr. Quigg's motion to proceed in forma pauperis.  The

allegations in Mr. Quigg's Complaint, however, fail to state a claim upon which

relief may be granted and this matter should be dismissed.

## I.  MOTION TO PROCEED IN FORMA PAUPERIS

Pursuant to 28 U.S.C. § 1915(b)(1), Mr. Quigg must pay the statutory

$350.00 filing fee.  The initial partial filing fee will be waived, and he may

proceed with the case.  Mr. Quigg will be required to pay the fee in installments

and make monthly payments of 20% of the preceding month's income credited to

his prison trust account.  The percentage is set by statute and cannot be altered.  28

U.S.C. § 1915(b)(2).  Mr. Quigg must make these monthly filing-fee payments

simultaneously with the payments required in the other cases he has filed.  *Bruce*

*v. Samuels*, 136 S.Ct 627, 629 (2016).  By separate order, the Court will direct the

facility where Mr. Quigg is held to forward payments from Mr. Quigg's account to

the Clerk of Court each time the account balance exceeds $10.00, until the filing

fee is paid in full.  28 U.S.C. § 1915(b)(2).

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

Mr. Quigg is a prisoner proceeding in forma pauperis so the Court must

review his Complaint under 28 U.S.C. §§ 1915, 1915A.  Sections 1915A(b) and

1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis

and/or by a prisoner against a governmental defendant before it is served if it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or

seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it

was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).  Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## III.  PROCEDURAL HISTORY

In 1969, Mr. Quigg was found guilty of murder in the first degree and sentenced to life in prison.  *State v. Quigg*, 155 Mont. 119, 121-22, 467 P.2d 692, 693-94 (1970).  Mr. Quigg was granted parole in May 2006.  *Quigg v. Salmonsen, et al.,* Mont. Supreme Court Order, OP 18-0098 (March 13, 2018).

Mr. Quigg was arrested on September 15, 2015 on a warrant to hold a parolee.  According to the docket in Mr. Quigg's federal criminal case, a federal

Writ of Habeas Corpus ad Prosequendum was issued for Mr. Quigg on December 4, 2015. *United States v. Quigg*, 15-cr-147-BLG-SPW, Doc. 10. He was taken out of state custody at MSP and into the custody of the United States Marshals Service (USMS) on December 29, 2015. On February 2, 2017, Mr. Quigg was convicted in this Court of conspiracy to possess with intent to distribute methamphetamine, possession of methamphetamine, and distribution of methamphetamine. He was sentenced on June 30, 2017 to the Bureau of Prisons for a term of 121 months on all counts to run concurrent and the sentence to run consecutive with Mr. Quigg's state court case. *United States v. Quigg*, Criminal Action No. 15-CR-147-BLG-SPW, Doc. 182. Mr. Quigg was returned to MSP on July 13, 2017. *Quigg v. Salmonsen, et al.*, Civil Action No. 18cv77-H-DLC-JTJ, Doc. 12 at 8.

Mr. Quigg's parole was revoked by the Montana Board of Pardons and Parole (BOPP) on September 20, 2017. *Quigg v. Salmonsen, et al.*, Civil Action No. 18cv77-H-DLC-JTJ, Doc. 12-24. Mr. Quigg filed a petition for writ of habeas corpus in the Montana Supreme Court on February 12, 2018 claiming he was unlawfully imprisoned because of his parole revocation proceedings. On March 13, 2018, the Montana Supreme Court issued an Order denying the petition for writ of habeas corpus. *Quigg v. Salmonsen, et al.,* Mont. Supreme Court Order,

4

OP 18-0098 (March 13, 2018).

Mr. Quigg filed a federal petition for writ of habeas corpus on July 2, 2018 in this Court also based upon his state court parole revocation proceedings. *Quigg v. Salmonsen, et al.*, Civil Action No. 18cv77-H-DLC-JTJ, Doc. 1. He is currently in state custody but on October 24, 2018, the BOPP granted Mr. Quigg parole to his federal detainer effective in January 2019. *Quigg v. Salmonsen, et al.*, Civil Case No. 18cv77-H-DLC-JTJ, Doc. 15–Notice of Change of Custody.[1]

## IV. QUIGG'S FACTUAL ALLEGATIONS

On September 15, 2015, Mr. Quigg was arrested by Probation/Parole Officer Evans and confined in the Yellowstone County Jail under a "Warrant to Hold Probationer or Parolee" prepared by Officer Evans. Officer Evans allegedly told jail staff to not allow Mr. Quigg to make telephone calls or have visits for one week.

Officer Evans took possession of Mr. Quigg's automobile/house keys when he arrested him and told him he would place the keys in YCDF property box

---

[1]A trial court may take judicial notice of other federal court records and proceedings. *See Reyn's Pasta Bella, LLC. V. Visa USA, Inc.*, 442. F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of court filings from other federal court proceedings as matters of public record); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (stating that a federal court may take judicial notice of proceedings both within and outside of the federal judicial system).

maintained by the jail for property belonging to prisoners, but failed to do so.  As a result, Mr. Quigg's car was stolen and his household property was also stolen. During the search of Mr. Quigg's residence initiated by Officer Evans, a locked wall-installed metal box containing valuable antiques and collectable silver dollars was pried open and the items therein were allegedly stolen by Officer Evans and company, or left unsecured to be stolen by others.  Mr. Quigg had informed Officer Evans of the location of the key to that locked box so it would not be damaged in the search but Officer Evans did not use the key.

On September 17, 2015, Officer Evans contacted Mike Webster, a representative of the BOPP.  Mr. Webster informed Officer Evans that Mr. Quigg should be returned to MSP for a formal hearing before the BOPP.  Mr. Quigg contends the on-site hearing process was supposed to be conducted by the local Probation/Parole Office and the BOPP was not supposed to be involved until and unless a finding of "probable cause" was made at the on-site hearing.  He argues the conversations between Mr. Webster and Officer Evans is evidence of a conspiracy to violate Mr. Quigg's rights to a fair and open on-site hearing.

On September 22, 2015, Officer Evans served Mr. Quigg with a Report of Violation (ROV) alleging that Mr. Quigg violated previously imposed conditions of parole by failing to comply with all city, county, state, federal laws, ordinances,

failing to conduct himself as a good citizen, and possessing illegal drugs.  Mr.

Quigg submitted a list of five witnesses to Officer Evans.  Officer Evans stated

that if the witnesses were "able/willing to attend" that the location of the hearing

would be changed from the jail to a conference room at the Probation/ Parole

Office.  Officer Evans also noted that the hearing date was scheduled for

September 25, 2015 at 1:00 p.m. at YCDF.  Mr. Quigg alleges Officer Evans

prepared the ROV based on hearsay and not on his personal knowledge.  He

contends Officer Evans refused to allow Mr. Quigg to post bail or be released on

his own recognizance during the pendency of the on-site hearing.  He also

contends the ROV did not contain the basic information needed to prepare a

defense against the allegations and falsely accused Mr. Quigg of using dangerous

drugs without supporting documentation.

On September 22, 2015 and on September 25, 2015, Mr. Quigg requested

that Officer Evans and Probation/Parole Officer Taylor take (or order taken) hair

sampling to demonstrate that Mr. Quigg had not consumed any type of controlled

substances except what had been prescribed by a doctor.  The request was denied.

On September 25, 2015, Officer Taylor conducted the on-site hearing at

YCDF but the YCDF Jail Captain would not allow Mr. Quigg's witnesses to

attend.  Mr. Quigg argues that because of this Officer Taylor should have

conducted the hearing at the Probation and Parole Office. Mr. Quigg's wife, requested as a witness, was in the same jail as Mr. Quigg. Two of Mr. Quigg's friends who are attorneys were allowed to attend the on-site hearing but accordingly to Mr. Quigg were not allowed to present arguments due to the deficiency of the information being provided upon which to prepare a defense. Mr. Quigg contends Officer Taylor found "probable cause" based solely on the fact that Mr. Quigg was "under investigation" for an alleged criminal offense. Mr. Quigg contends that being under investigation by law enforcement is not a legally sufficient basis for finding "probable cause."

Mr. Quigg contends Officer Evans made allegations of Mr. Quigg's "drug use" to a news reporter for the Billings Gazette and these allegations were quoted in an article. Mr. Quigg contends there was never any truth, evidence, or rational basis for Officer Evans to make the allegations of drug use in his ROV or to the reporter and this allegation was libelous and slanderous. Mr. Quigg alleges Officer Evans took his cell phone without a warrant, turned it on, examined its contents, and, without lawful authority, gave the phone to a law enforcement officer with the expectation that the phone would be used in criminal proceedings.

Mr. Quigg alleges that DOC Parole and Bureau Chief/Administrators, both present and past, who are responsible for the hiring, training, and supervision of

all Probation/Parole Officers in the regional offices, did not adequately supervise, train, or control these employees to prevent the wrongs and constitutional violations set forth herein from happening.  He contends the present and past DOC Parole Bureau Training Officers failed to adequately train the probation and parole field officers in their duties and responsibilities to prevent the alleged acts of Officer Evans, Officer Taylor, and Mr. Webster set forth herein.

## V.  ANALYSIS

### A.  Preliminary Parole Revocation Proceedings

#### 1.  Res Judicata

Mr. Quigg's claims challenging his parole revocation proceedings are barred by collateral estoppel because the Montana Supreme Court has already decided the issues raised.  Because the prior judgments were issued by state courts, state law on res judicata applies.  *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379-80 (1985).  Under Montana law, "[t]he doctrine of res judicata, also known as claim preclusion, was originally and remains a common law rule of civil procedure." *State v. Huffine*, 392 Mont. 103, 108, 422 P.3d 102, 107 ( Mont. 2018)(internal citations omitted).  "In contrast to res judicata, collateral estoppel bars relitigation of an issue of fact or law previously litigated in a prior proceeding by the same parties or their privies, whether under

9

the same or a different legal claim." *Id.* at 108.  Collateral estoppel applies when: (1) both proceedings involved the same parties or their privies; (2) the same issue was at issue and conclusively decided on the merits in the prior litigation; (3) the prior proceeding afforded the party or privy against whom estoppel is asserted a full and fair opportunity to litigate the issue; and (4) the prior proceeding resulted in a final judgment.  *Baltrusch v. Baltrusch*, 331 Mont. 281, 130 P.3d 1267 (Mont. 2006).  Mr. Quigg's prior Montana state habeas proceeding has preclusive effect on this litigation.  *See Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1231 (9th Cir. 2014) (reasoned denials of California habeas petitions have claim preclusive effect on civil litigation).

On February 12, 2018, Mr. Quigg filed an original Petition for Writ of Habeas Corpus in the Montana Supreme Court.  *Quigg v. Salmonsen, et al.,* Mont. Supreme Court Order, OP 18-0098 (March 13, 2018).  Both this action and Mr. Quigg's state habeas proceeding involve the same parties or their privies.

The issue raised herein is the same issue raised in Mr. Quigg's state habeas proceeding–whether Mr. Quigg's constitutional rights were violated at the on-site hearing.  In the current matter, Mr. Quigg contends:  (1) Officer Evans failed to prepare the ROV based upon personal knowledge, (2) Defendants circumvented the requirements of the on-site hearing, (3) Defendants refused Mr. Quigg's

request for drug testing, (4) Defendants denied Mr. Quigg his right to call witnesses, (5) Defendants based the ROV merely on Mr. Quigg being the subject of a criminal investigation, (5) Defendants prevented Mr. Quigg's attorney-witnesses from representing him at the on-site hearing, and (6) Defendants failed to train Defendant probation/parole officers.  (Doc. 2.)

In his Montana petition for writ of habeas corpus, Mr. Quigg made the same allegations complaining that the ROV's notice requirement was insufficient in that it failed to state facts indicating that the violation of conditions were based on personal knowledge; failed to identify the basic facts underlying the allegations as to the dates of events, locations, individuals involved, etc. such that it denied advance notice of the details and facts upon which to defend; and denied the right to call relevant witnesses.  *Quigg v. Salmonsen, et al.,* Mont. Supreme Court Order, OP 18-0098, Petition filed 2/12/18.

The Montana Supreme Court analyzed these claims and found:

> Quigg was informed of the reasons for his arrest and was also provided a copy of the ROV. He admits that he was aware of the on-site hearing, and that he had the opportunity to appear and speak for himself. Quigg also received a copy of the Summary of On-Site Hearing as prepared by the Hearings Officer. Section 46-23-1024(3), MCA (2015). Quigg was thus given proper notice of the proceeding and the opportunity to participate.

*Quigg v. Salmonsen, et al.,* Mont. Supreme Court Order, OP 18-0098 (March 13,

11

2018).  With respect to Quigg's argument that he was denied the attendance of

witnesses, the Montana Supreme Court said:

> Quigg argues that the denial of the attendance of his witnesses
> violated *Morrissey*. Although not expressly addressed in statute,
> witness participation is addressed in Montana by regulation:
>
>> The parolee may have witnesses attend the on-site
>> hearing, but *only if* they [sic] witnesses have relevant
>> testimony to present concerning whether the parolee did
>> or did not violate the conditions of release on parole, and
>> *only if* the witnesses can qualify to enter the correctional
>> facility if the hearing is held in a secure facility.
>
> Admin. R. M. 20.25.801(6) (2012) (emphasis added). The Hearings
> Officer noted that the attendance of Quigg's witnesses, who were
> likewise detained at the facility, was denied by the detention facility
> commander for security concerns, which is an exception to witness
> attendance stated in Rule 801(6).  Consequently, the hearing officer
> contacted Quigg's witnesses in person and offered to take their
> recorded or written statements to be presented at the hearing. One
> written statement from a witness was received and read during the
> proceeding. Quigg appeared at the on-site hearing with counsel. After
> consideration of the process given to Quigg, we conclude that his
> complaints about on-site hearing lack merit. The hearing officer
> properly found that probable cause had been established and
> recommended "to hold the parolee for the final decision of the board.
> . . ." Section 46-23-1024(3), MCA (2015).

*Id.*

Mr. Quigg was provided a full and fair opportunity to litigate his

constitutional challenges at the Montana Supreme Court.  On March 13, 2018, the

Montana Supreme Court denied Mr. Quigg's habeas petition on the merits finding,

"Quigg has not demonstrated that his rights under the Montana and United States Constitutions have been violated." *Id.* The Montana Supreme Court has issued a final judgment on the ultimate issue regarding these claims and as such all four elements of collateral estoppel have been met. Mr. Quigg's Section 1983 constitutional claims challenging the procedures used at his on-site are therefore barred by collateral estoppel and must be dismissed.

Mr. Quigg can only challenge his state custody by way of a writ of habeas corpus under 28 U.S.C. § 2254, after exhausting appropriate avenues for relief. *Muhammad v. Close*, 540 U.S. 749, 751 (2004); *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 500 (1973). On July 2, 2018, Mr. Quigg filed a federal habeas petition under 28 U.S.C. § 2254 alleging his custody pursuant to the parole revocation is in violation of federal law. *See Quigg v. Salmonsen*, Civil Action No. 18cv77-H-DLC-JTJ. Mr. Quigg cannot appeal a state court judgment through a civil Section 1983 action filed in this court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 468–469 (1983).

### 2. Merits

Even if Mr. Quigg's claims were not barred by collateral estoppel they are frivolous and fail to state a claim. Mr. Quigg claims Defendants denied him

procedural due process with regard to his preliminary parole revocation hearing as mandated by *Morrissey v. Brewer*, 408 U.S. 471(1972).  In *Morrissey*, the Supreme Court held that a State may not revoke parole without affording the defendant due process.  *Id.* at 481. The Supreme Court imposed due process requirements at two stages of the typical process of parole revocation: first, at the time of arrest and detention of the parolee; second, when parole is formally revoked.  *Id.* at 485–87.  At the first stage (which is at issue here), "some minimal inquiry [must] be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly convenient after arrest" "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485.  It is at this first stage that Mr. Quigg complains that he was denied due process.

According to the recording of the on-site hearing filed in Mr. Quigg's federal habeas case, the initial on-site hearing was held at YCDF on September 25, 2015.  *Quigg v. Salmonsen*, Civil Action No. 18cv77-H-DLC-JTJ, Doc. 13. Present at the hearing was Hearings Officer Dan Taylor, Mr. Quigg, Officer Evans, Agent Martian from the Montana Department of Criminal Investigations (DIC), and two attorneys representing Mr. Quigg:  Michael Usleber and Jesse

Myers.  Mr. Quigg acknowledged he received notice of the hearing and of the alleged violations, that he understood he could speak on his own behalf, that he could present documents and witnesses, and that he could question the witnesses against him.

Officer Taylor addressed the issue of the witnesses requested by Mr. Quigg. Officer Taylor advised Mr. Quigg that he had spoken to the YCDF Commander, Captain Bofto, on September 23, 2015, and that the request to have witnesses was denied due to the facility's security procedures.  Officer Taylor explained that he had obtained a written statement from Mr. Quigg's wife who was also incarcerated at YCDF at the time.  Officer Taylor advised Mr. Quigg he had asked Andrew Quigg (Mr. Quigg's son) for a statement and to contact, as Mr. Quigg indicated on the form, the other persons listed, (i.e., Tim Quigg and T.J. Roeber & wife Crystal) to see if they would like to provide statements.  Officer Taylor did not receive any statements from the other individuals.  The written statement from Mr. Quigg's wife was read into the record.

Officer Evans then recited the alleged violations from the ROV. Specifically, it was alleged that Mr. Quigg had violated Montana Parole Rule 8, Laws and Conduct, which required Mr. Quigg to comply with all laws and conduct himself as a good citizen, and that he had violated Montana Parole Rule 9, which

prohibited Mr. Quigg from using or possessing illegal drugs or drug paraphernalia. Officer Evans stated he had confirmed that a confidential informant and an undercover DCI agent had purchased methamphetamine from Mr. Quigg and his wife and had conversations with Mr. Quigg concerning sale and distribution of methamphetamine.  Additionally, Officer Evans recounted that Mr. Quigg's residence was searched, that a metal container containing suspected illegal drugs was found in the Quiggs' bedroom, and that drug paraphernalia including a bindle, baggie, syringe needles, and spoons with residue were also found in the home.

The statements contained in the ROV were corroborated by Agent Martian who stated that Mr. Quigg and his wife had sold methamphetamine to an undercover agent and a confidential informant which was recorded.  Agent Martian also said Mr. Quigg had subsequent telephone calls and one personal meeting with the undercover agent, which were also recorded, where they discussed future methamphetamine transactions.  On questioning by Mr. Quigg and one of his attorneys, Agent Martian stated the drug transaction had occurred within the past two months and that the investigation had started in June 2015.

Officer Taylor found probable cause to believe that Mr. Quigg had violated the conditions of his parole.

Pursuant to *Morrissey*, 408 U.S. 471, at the preliminary hearing, the parolee

is entitled to, among other things, notice of the hearing and its purpose, the opportunity to speak on his own behalf, present witnesses, and, in some cases, question any person who has given adverse information on which the parole revocation is to be based. *Morrissey*, 408 U.S. at 485-87. The Ninth Circuit has specifically held that "[t]here is no precedent that due process requires a parole officer to contact an incarcerated parolee's evidentiary witnesses." *Marble v. Poole*, 687 Fed.Appx. 587 (9th Cir. April 18, 2017).

The Court has reviewed the audio recording of the preliminary on-site hearing. Mr. Quigg received notice of the hearing and its purpose, the opportunity to speak on his own behalf, and the opportunity to question Agent Martian who testified regarding the criminal investigation of Mr. Quigg. Although Agent Martian would not give the dates of specific incidents, he did indicate that the investigation into Mr. Quigg began in June 2015. Mr. Quigg requested five witnesses: his wife–Dusty Whitehouse, his son–Andrew Quigg, his nephew–Tim Quigg, any person known by the State to have been present on any date of alleged violation, and T.J. Roeber and his wife Crystal. Mr. Quigg's wife was incarcerated at YCDF and her statement was read into the record at the hearing. Mr. Quigg provided a phone number for his son Andrew. Officer Taylor asked Andrew for a statement and asked for him to obtain statements from the other

witnesses and Office Taylor did not receive any statements.  Officer Taylor

advised Mr. Quigg that he could have gotten written or taped statements from

witnesses on his behalf even if the witnesses were not allowed into the facility.

Mr. Quigg was not entitled to more.

Moreover, Mr. Quigg had two attorneys at the hearing who were there to

advise him.  In addition, Officers Evans, Taylor, and Martian answered many of

the attorneys' questions.

The Court finds that Mr. Quigg was afforded the due process protections set

forth in *Morrissey*.  Moreover, the Court will not ignore the practical realities of

this case.  The practical reality is that a federal jury found Mr. Quigg guilty of the

following:

> Count 1:  That beginning in or about the December 2014, and
> continuing through on or before September 15, 2015, at Billings, and
> other locations in the State and District of Montana, and elsewhere,
> the defendants, GARY LEE QUIGG, and DUSTY WHITEHOUSE,
> knowingly and unlawfully conspired and agreed with each other and
> with others, both known and unknown to the Grand Jury, to possess,
> with the intent to distribute, and to distribute, in violation of 21
> U.S.C. § 841(a)(l) . . . in violation of 21 U.S.C. § 846.
>
> Count II:  That in or around December 2014 and ending on or about
> September 15, 2015, at  Billings, in the State and District of Montana,
> the defendants, GARY LEE QUIGG and DUSTY WHITEHOUSE,
> knowingly possessed, . . . of a substance containing a detectable
> amount of methamphetamine, a Schedule II controlled substance, in
> violation of 21 U.S.C. § 841(a)(l).

Count III:  That on or about August 17, 2015, at Billings, in the State and District of Montana, the defendants, GARY LEE QUIGG and DUSTY WHITEHOUSE, knowingly distributed a substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841 (a)(l ).

*United States v. Quigg*, 15-cr-147-BLG-SPW, Superceding Indictment, Doc. 91; and Jury Verdict, Doc. 123; Judgment, Doc. 182.  Based upon this conviction Mr. Quigg's state parole was revoked.  *Quigg v. Salmonsen*, Civil Action No. 18cv77-H-DLC-JTJ, Doc. 12-24 at 2–State of Montana Board of Pardons and Parole Case Disposition–Revocation.

While Mr. Quigg disputes the evidence in the ROV, the United States Government introduced evidence at the criminal trial at which Mr. Quigg was convicted that on August 17, 2015, a confidential informant and a DCI agent, acting undercover, went to the Quigg residence in Billings for the purpose of purchasing methamphetamine.  During that transaction, $900 was provided to Mr. Quigg and his wife with the expectation they were purchasing approximately 1 ounce of methamphetamine. The transaction was recorded via a hidden recording device.  The methamphetamine collected would later be analyzed by the DEA Western Regional Laboratory and determine to be methamphetamine.  (Day 2 trial transcript, Doc. 204.)

On September 5, 2018, the Ninth Circuit Court of Appeals made the

19

following observation about Mr. Quigg's federal conviction:

> There was sufficient evidence produced at trial to convict Quigg on all counts.  We must view the evidence in the light most favorable to the prosecution, and affirm if any rational trier of fact could find the elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Although Quigg took the stand and offered an explanation which largely placed the blame on his wife as a user, the jury was free to disbelieve his testimony and instead credit that of co-conspirator Mendonsa, who testified she and her husband were involved in a conspiracy to purchase methamphetamine from California every month and distribute 10-15 ounces to Quigg and his wife for further sale and distribution. This testimony, coupled with Quigg's participation in a controlled purchase by law enforcement, and various conversations about obtaining more methamphetamine, was sufficient to support the jury's verdict.

*United States v. Quigg*, 736 Fed.Appx. 702, 2018 WL 4214220 (9th Cir.

September 5, 2018).

Given that the information in the ROV was presented as evidence in the

federal criminal proceedings after which Mr. Quigg was convicted and that

conviction has been affirmed on appeal, it is clear that even if Mr. Quigg's

witnesses were allowed to testify at the on-site hearing, probable cause would

have been found that Mr. Quigg was violating his conditions of parole.

The Court finds Mr. Quigg's due process claims regarding the on-site

hearing fail to state a claim, are frivolous, and duplicative of the issues raised in

his state habeas proceedings and federal habeas proceedings.

**B.  Deprivation of Property**

Mr. Quigg alleges Officer Evans violated his Fourteenth Amendment rights against property deprivation without due process when he took Mr. Quigg's car and house keys, rendered Mr. Quigg unable to protect his property, and as a result his property was stolen by Officer Evans, law enforcement acting in concert with Officer Evans, or other unknown persons Officer Evans enabled to do so. (Complaint, Doc. 2 at 11, ¶ 53.)

Prisoners have a protected interest in their personal property.  *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).  Where a prisoner alleges the deprivation of a property interest caused by the unauthorized negligent or intentional action of a prison official, the prisoner cannot state a constitutional claim where the state provides an adequate post-deprivation remedy.  *See Zinermon v. Burch*, 494 U.S. 113, 129–32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Daniels v. Williams*, 474 U.S. 327, 328 (1986)(negligent act of an official does not implicate the due process clause).  The Montana Tort Claims Act, Mont. Code Ann. §§ 2–9–101, et seq., provides an adequate post-deprivation remedy. *See, e.g.*, Mont. Code Ann. § 2–9–101(1) (2007).  Thus, to the extent Mr. Quigg alleges his property was lost or stolen, he has an adequate state post-deprivation remedy and cannot state a due process claim.

An authorized, intentional deprivation of property (one carried out pursuant to established state procedures), however, is actionable under the Due Process Clause. *Hudson*, 468 U.S. at 532, n. 13 (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). Mr. Quigg has only alleged unauthorized negligent or intentional takings of his property for which he has an adequate state post-deprivation remedy. This claim will be recommended for dismissal.

### C.  Use of the Phone

"[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context . . . some rights are simply inconsistent with the status of a prison or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (*quoting Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Thus, jail personnel may regulate speech if such a restriction is reasonably related to legitimate penological interests and an inmate is not deprived of all means of expression. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir.2002) (*citing Turner v. Safley*, 482 U.S. 78, 92 (1986)).

The United States Constitution does not provide for an unfettered right to use a telephone. Rather, to state a constitutional claim, a plaintiff must allege that

the use of a phone is connected to another constitutional right, such as the right of free speech or access to the courts. Even then, a telephone is only one means for an inmate to exercise the extremely limited First Amendment right to communicate with persons outside the jail. *Valdez*, 302 F.3d at 1048. That same right may be met through other means such as correspondence or personal visits. Mr. Quigg has not alleged that he was denied all means of communication for the one week at issue. He has not stated sufficient allegations to establish a violation of right to free speech or access to the courts. This claim should be dismissed.

### D.  Search of Cell Phone

Mr. Quigg alleges Defendant Evans searched his cell phone in violation of his Fourth and Fourteenth Amendment rights. In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 487.

Mr. Quigg's claims regarding the search of cell phone are barred by *Heck*. Mr. Quigg alleges that his cell phone was given to a law enforcement officer with

the intent that the contents of the phone be used in support of a criminal investigation.  (Complaint, Doc. 2 at 9, ¶ 45.)  Agent Martian testified at the federal criminal trial regarding the contents of Mr. Quigg's cell phone which implicated Mr. Quigg and his wife in the possession and sale of illegal narcotics. *United States v. Quigg*, Criminal Action No. 15-cr-147-BLG-SPW, 205 at 59-82. Mr. Quigg was convicted in this Court of conspiracy to possess with intent to distribute methamphetamine, possession of methamphetamine, and distribution of methamphetamine on February 2, 2017 and sentenced on June 30, 2017.  *United States v. Quigg*, Criminal Action No. 15-cr-147-BLG-SPW, Doc. 182.  Because the search of the cell phone led at least in part to Mr. Quigg's federal conviction, Mr. Quigg's claims regarding the search of the phone are barred by *Heck* and should be dismissed.

### E.  State Law Claims

Mr. Quigg raises pendent state law claims of libel, slander, abuse of discretion, and violations of the Montana Constitution.  (Doc. 2.)   The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim," if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).

Should the Court adopt the recommendation to dismiss Mr. Quigg's federal claims, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).  *See San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478 & n.12 (9th Cir. 1998) (upholding district court declining to exercise supplemental jurisdiction and requiring no further explanation by district courts acting in accordance with 28 U.S.C. § 1367(c)(3)); *Satey v. JP Morgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion.") (*quoting Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007)).

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Mr. Quigg's Motion to Proceed in Forma Pauperis (Doc. 1) is GRANTED.  The Clerk shall file the Complaint without prepayment of the filing fee.

2.  The Clerk shall edit the text of the docket entry for the Complaint (Doc. 2) to remove the word "LODGED" and the Complaint is deemed filed on September 17, 2018.

3.  At all times during the pendency of this action, Mr. Quigg shall immediately advise the Court of any change of address and its effective date. Failure to file a "Notice of Change of Address" may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1.  This matter should be DISMISSED and the Court should decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

2.  The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.  The record makes

plain the instant Complaint lacks arguable substance in law or fact.

4. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Quigg failed to state a claim upon which relief may be granted, his claims are frivolous, and malicious. *See Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (noting that courts may dismiss under § 1915 a complaint that merely repeats pending or previously litigated claims). Courts are not required to entertain duplicative or redundant lawsuits and may dismiss them as frivolous or malicious under § 1915(e). See id.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Quigg may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of

---

[2]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Mr. Quigg is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 26th day of December, 2018.

_/s/ John Johnston_____
John Johnston
United States Magistrate Judge

28